*318 OPINION OF THE COURT
John Manning Regan, J.
This case involves a controversy between an owner who lost, and a finder who found, a bag filled with valuable airplane tools.
David Fisher, the plaintiff, is a licensed pilot who regularly flies his personal airplane at a local airport. Fisher himself also performs the routine maintenance and repair of his airplane, and he owns the tools required for this purpose. In mid-June 1990, he inadvertently left his tool bag somewhere in the automobile parking lot adjacent to the hanger in which he keeps his plane. Returning to the hanger several weeks later, he only then realized he had lost his tools on his prior sortie.
Fisher, at that time, inquired of the desk clerk, in what is called the fixed base operations (FBO) building, whether any one had reported finding a bag of airplane tools. The desk clerk, Ms. Yorkey, replied that the defendant, Herbert Klingenberger, some weeks earlier, had told her that he had found a bag of airplane tools in the automobile parking lot. She added that Mr. Klingenberger had refused, however, to divulge what types of tools specifically he had found, and further, he had also refused to leave the tools with her. Ms. Yorkey also gave Mr. Fisher, at the time of his first inquiry, the defendant’s, Herbert F. Klingenberger’s, phone number, and she suggested he call the defendant.
Evidently, before Fisher had had adequate opportunity to reach Mr. Klingenberger on the telephone, Klingenberger, and his son, Richard (who is also a pilot), returned to the FBO building and were informed by Ms. Yorkey of Fisher’s claim for his lost tools. The testimony of all the witnesses thereafter is that Fisher and Klingenberger could not agree on any resolution of Fisher’s claim because the defendant, Herbert Klingenberger, had given the bag of tools to his son, Richard, and because of subsequent events, neither defendant any longer had possession of them.
Richard Klingenberger testified that in late June 1990, and before he had any notice of Fisher’s claim, an unidentified man had approached him in the parking lot next to the FBO building. The man stated he was the owner of lost airplane tools, and he then satisfactorily described to Klingenberger the contents of the toolbag. Whereupon, Richard Klingenberger accepted the unidentified man’s claim of title and surren *319 dered the tools to him then and there. The transcript of Richard Klingenberger’s testimony on this point is:
"Q. (You gave up the tools) without asking for identification, or for his name?
"A. There was no need to do that. He knew what I had. I believed they were his. I would not have known him anyway. I was glad to get rid of them. I just wanted to get rid of them.”
On the whole case, this court is satisfied of the following facts: (a) Fisher, the plaintiff, is the true owner of the airplane tools; (b) Herbert F. Klingenberger is a true finder of the tools; (c) Richard L. Klingenberger is a possessor of the tools, without a claim of ownership, and with knowledge of the fact that they were "lost property”; (d) Richard Klingenberger’s delivery of the tools to an unidentified man was the act of a person who was making an honest mistake, notwithstanding his failure to ascertain the person’s identity.
At common law, a finder was entitled to the use, possession, and enjoyment of any property he had found as against the whole world, except for the true owner. (Armory v Delamirie, 1 Strange 505, 93 Eng Rep 664 [Ct Common Pleas 1722].) It also followed, at common law, that a finder was not liable, civilly or criminally, for keeping the property he had found against all false claims of ownership, or even against claims of ownership which the finder reasonably believed to be false. (Isaack v Clark, 2 Bulstrode 306, 80 Eng Rep 1143 [King’s Bench 1615]; New York & Harlem R. R. Co. v Haws, 56 NY 175 [1874].) Yet, at common law, if a possessor of goods, such as a finder, delivered property to a third person whom he reasonably believed to be the true owner — but was mistaken as to that fact — he became liable to claims by the true owner, notwithstanding his delivery of the found property to a third person by honest mistake. (Lichtenhein v Boston & Providence R. R. Co., 65 Mass 70 [1853].)
In New York, in 1958, the Legislature enacted article 7-B of the Personal Property Law. That article purports to govern the duties and responsibilities of all persons in respect to "lost and found” property. The principal duties the statute placed on finders were to deliver any found property: (1) to a police department, or (2) to the owner of the premises on which the property was found, within 10 days; the recipients of the lost property to act thereafter as temporary trustees. Despite the act’s attempt to answer exhaustively the legal intricacies which arise in lost property situations, the statute did not *320 directly deal with the issue of a finder’s liabilities to the true owner. As stated in the memorandum of the Executive Secretary of the Law Revision Commission (the original sponsor of the bill at the time the Legislature considered it), the bill’s main function was to dispose of lost property which the true owner never claimed: "This bill is one of the major proposals of the Law Revision Commission in 1958. Its purpose is * * * to define the rights of finders when lost property remains unclaimed by the owner”. (Bill Jacket, L 1958, ch 860 [emphasis added].)
Notwithstanding this statement of purpose, which limits the bill to regulating lost property unclaimed by the owner, article 7-B still contains several indirect references to the "finder/ owner” relationship, which provide some insight into the legal ramifications which obtain when the true owner does appear, and does make a claim against the finder for the return of his property.
The first indirect reference in article 7-B is a clause exculpating finders, which ends the fourth subdivision of section 252 of the Personal Property Law. The clause states: "A person who delivers found property * * * to the person in possession of the premises where the property was found is not liable to the owner * * * if he had no reason to believe that such person in possession of the premises would not comply with * * * this section.” (Emphasis added.)
The second indirect reference consists of a combined reading of sections 254 and 257. In section 254, the police must return the found property to the rightful owner if the time limits in the statute for their retention of the property have not expired, or, even if they have expired, if the finder has as yet made no claim. But section 257 also provides that if the retention time has expired, and if the finder has made claim, and if the police have delivered the property to the finder, then the true owner has forfeited his original title to the property, and the property belongs to the finder.
From this examination of the statute, it is clear that, under its provisions, a finder can divest the true owner of his original title to the lost property by complying fully with the provisions of the act. Moreover, he can avoid any liability to the true owner if he complies fully with the provisions of the act.
What does not follow from this examination of the statute is an inference that a finder becomes automatically liable to the *321 true owner if he does not comply fully with the provisions of the act. In other words, it does not follow that a violation of the act results in a per se civil liability. This conclusion arises from the fact that the act was not originally intended to create legal protection for the property interests of the owner, nor was it intended to create a standard of care for the finder to obey, but rather to establish legal safeguards for the property interests of finders.
To begin with, the act provides a specific criminal penalty for a finder’s conscious refusal, or willful neglect, to fulfill its terms. Subdivision (3) of section 252 makes such noncompliance a misdemeanor and authorizes a fine and/or a six-month jail sentence.
The problem with this criminal provision is that most, if not all, finders are ignorant of this law and neither consciously refuse, nor willfully neglect, to obey it. They merely know nothing of it, and behave pursuant to their own consciences. Whether the behavior of finders, in not complying with the terms of the statute, constitutes a failure to meet an ascertainable standard of reasonable care for which they become civilly liable to the true owner in the event he claims the property from them at a later time, seems, accordingly, to this court, to be a question of fact in each case, rather than a question of law predicated on a breach of the executory duties the statute imposes on finders. Certainly, the degree of care a reasonable man may follow after he finds something may be far different from the duties this law imposes under its criminal penalty.
Furthermore, the precise steps the statute compels a finder to follow derive more from the fact that the law ultimately transfers title to the property from the true owner to the finder (or surrogates of the finder) than it does from a desire to fix a standard of care for the protection of the property rights of the original owner. The legislative history of this act demonstrates that Personal Property Law article 7-B is a process to transfer title to "lost property” from its original owners, and to invest title to that "lost property” in new owners. Given the fact that this law deprives original owners of their property interests, it must meet rigid constitutional standards of due process for notice and opportunity to those original owners — and it adequately does so. That is its chief focus.
Moreover, and even more persuasively, the act does not *322 provide, specifically, for any civil liability to the true owners if the procedures which the act imposes on finders are not observed. As in other States, the Legislature in New York could easily have adopted a civil liability provision if finders disobeyed the law. Many States have these types of clauses. This omission, together with the stated purpose of the law as expressed in the memorandum of the Law Revision Commission, constrains this court to conclude that finders’ civil liability to owners was beyond the sweep of this act, and that the Legislature, in regard to that issue, did not intend to alter the rules of the common law.
Accordingly, and for the reasons expressed above, this court finds that article 7-B does not constitute the exclusive standard of care a finder must meet in order to avoid civil liability to a true owner. This court recognizes that there are rational methods of assuring the return of lost property to rightful owners other than delivery of found property to the police.
Thus, the question a court must ask itself when an owner sues a finder for the return of his property, or for damages for the loss and/or misuse of the same, is not simply: "Has the finder complied with article 7-B of the Personal Property Law?” The proper question is: "Has the finder acted in such a way as to create a substantial probability that the lost property will be returned to its true owner?” If the answer to the second question posed is "yes”, then noncompliance with article 7-B becomes immaterial because, as to the property interests of original owners, article 7-B was not calculated to erect the sole method of accomplishing a return of their lost property to them.
Having concluded that a finder’s violation of the terms of article 7-B does not amount to a per se civil liability to the true owner, the court now turns to the question of whether defendants’ conduct in this case created a substantial probability that the lost property would be returned to its true owner.
As to defendant, Herbert F. Klingenberger, the question must be answered "yes”. He notified the desk clerk in the FBO building of the finding at once, and left his name with her. That is reasonably calculated to reach the true owner since he lost his tools in the parking lot nearby. Klingenberger’s prudential judgment was to retain possession of the tools himself rather than give them to the clerk. The court cannot find fault with that decision, since Klingenberger would regu *323 larly return to the location himself. Nor can the court condemn the transfer of possession to the codefendant, Richard Klingenberger, as he also was a pilot, and a younger man, and would use the facilities of the airport even more often than his father, thereby increasing the probability of locating the owner.
As to defendant Richard Klingenberger, however, the facts are much different. His delivery of the tools to an imposter, without even getting any identification from him, cannot be condoned. His testimony that the stranger capably described the contents of the bag has left this court with some reservations, but that descriptive ability, alone, is not enough to prove ownership. Nor is it enough to excuse the negligence of not ascertaining the stranger’s identity.
Since that negligence and the ensuing transfer of possession of the tools has directly caused the plaintiff’s loss of his tools, Richard Klingenberger is liable for conversion and must pay the plaintiff the full market value of the tools.
Defendant Herbert Klingenberger is not liable as his actions constitute neither negligence nor conversion.